T.C. Memo. 2014-252

UNITED STATES TAX COURT

JAY ROSENTHAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28214-12L.                          Filed December 15, 2014.

<u>Steven Ray Mather</u>, for petitioner.

<u>Mindy S. Meigs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  This case arises from a petition for judicial review filed

in response to Notices of Determination Concerning Collection Action(s) Under

Section 6320 and/or 6330[1] with respect to petitioner's Federal income tax

_____

[1]  Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] liabilities for 2001, 2004,[2] 2006, and 2008. The issue remaining for decision is whether respondent abused his discretion in sustaining the proposed levies for 2001, 2006, and 2008 and the notice of Federal tax lien filing for 2006 and 2008.

FINDINGS OF FACT

I. Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time petitioner filed his petition, he was a resident of California.

On January 13, 2011, petitioner filed his 2001 Federal income tax return and paid the tax shown on the return. On April 4, 2011, the Internal Revenue Service (IRS) assessed statutory interest and additions to tax for 2001.

Petitioner did not file a Federal income tax return for 2006 or 2008. Consequently, the IRS prepared substitutes for returns for both years pursuant to section 6020(b). On August 8, 2011, the IRS mailed separate notices of deficiency

[1](...continued)
Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] After trial petitioner's 2004 tax liability was paid in full through an offset of an overpayment from a subsequent year. On March 31, 2014, respondent filed a motion to dismiss as to the taxable year 2004 on the ground of mootness. We granted respondent's motion on April 1, 2014.

[*3] for 2006 and 2008 to petitioner's last known address. Petitioner did not file a petition with the Court contesting the deficiency determinations, and on December 19, 2011, the IRS assessed the tax and additions to tax for 2006 and 2008.

II.     Petitioner's Collection Due Process (CDP) Appeal

A.     Levy and Lien Notices

Petitioner had unpaid tax liabilities for 2001, 2006, and 2008. On June 13, 2011, the IRS mailed petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (first levy notice), with respect to his outstanding income tax liability for 2001. On June 6, 2012, the IRS mailed petitioner a Letter 1058 (second levy notice) with respect to his outstanding income tax liabilities for 2006 and 2008. On June 21, 2012, the IRS mailed petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL), with respect to his outstanding income tax liabilities for 2006 and 2008.

On July 7, 2011, petitioner's representative, James Keating,[3] submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in response to the first levy notice. On June 15, 2012, Mr. Keating submitted a Form

---

[3] Mr. Keating held a power of attorney for petitioner and represented petitioner during the Appeals process.

**[*4]** 12153 in response to the second levy notice. On July 6, 2012, Mr. Keating submitted a Form 12153 in response to the NFTL. On the various Forms 12153 Mr. Keating indicated that petitioner was interested in submitting a collection alternative. Mr. Keating also stated that petitioner suffered from physical and psychological ailments which prevented him from effectively interacting with his representatives.

B.      Kentucky Appeals Office

On May 2, 2012, Settlement Officer Natalie Krueger of the Covington, Kentucky, Appeals Office mailed petitioner a letter stating that Appeals had received his request for a CDP hearing and scheduling a telephone CDP hearing for May 31, 2012. In the letter, Settlement Officer Krueger stated that she could consider collection alternatives, such as an installment agreement or an offer-in-compromise (OIC), only if petitioner provided: (1) a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and (2) a signed Federal income tax return for 2010 (which had not been filed).[4] Settlement Officer Krueger instructed petitioner to submit the listed items by May 23, 2012. Petitioner did not submit the requested information.

---

[4] The letter also stated that petitioner needed to file all unfiled tax returns, even though only the 2010 tax return was requested specifically.

[*5] Instead, on May 30, 2012, the day before the scheduled CDP hearing, Mr. Keating telephoned Settlement Officer Krueger and requested an extension of time to submit the requested information because petitioner suffered from various mental and physical conditions, including diabetes, severe anxiety, and agoraphobia. Mr. Keating also requested that the case be transferred to the Appeals Office in Los Angeles, California, for a face-to-face hearing.

Settlement Officer Krueger rescheduled the telephone CDP hearing to June 25, 2012, and extended the time to submit the requested information to June 15, 2012. On June 14, 2012, Settlement Officer Krueger received a letter from Mr. Keating enclosing a partially completed Form 433-A,[5] a copy of petitioner's wage and income transcript for 2010, and a cover memo again requesting that the case be transferred to the Appeals Office in Los Angeles, California, for a face-to-face hearing. According to the Form 433-A, petitioner owned a condominium, an automobile, two Morgan Stanley accounts, two Wells Fargo accounts, furniture, and a piano. The Form 433-A showed that petitioner had assets in excess of his tax liabilities. Petitioner did not submit a 2010 tax return.

---

[5] Petitioner did not provide his income and expense information on the Form 433-A.

**[*6]** C.    <u>California Appeals Office</u>

On June 23, 2012, Settlement Officer Krueger transferred the case to the Appeals Office in Los Angeles, California, for a face-to-face hearing.  On July 16, 2012, all three transferred CDP hearing requests were assigned to Settlement Officer Nathan August.[6]

On August 7, 2012, Settlement Officer August mailed petitioner a letter scheduling a face-to-face hearing for October 4, 2012.  In the letter Settlement Officer August instructed petitioner to submit the following items by August 28, 2012:  (1) signed tax returns for tax years 2005, 2007, 2009, 2010, and 2011 (which had not been filed); (2) copies of bank statements for the prior six months; (3) a copy of petitioner's latest Morgan Stanley account statement; (4) documentation concerning petitioner's inheritance; and (5) a copy of the deed transferring title in the condominium to petitioner's name.  Petitioner did not submit the requested information.

On October 4, 2012, a face-to-face CDP hearing was held between Mr. Keating and Settlement Officer August.  Petitioner did not attend the hearing.  At the hearing Mr. Keating appeared without any of the requested financial

---

[6] After Settlement Officer August received petitioner's case file, he reviewed it and became aware of petitioner's mental and physical health claims.

[*7] information except a copy of the Rosenthal Family Trust document. Mr. Keating also brought a letter to the hearing from petitioner's psychologist, Dr. Bethany Marshall, stating that petitioner's mental health problems had "interfered significantly with his ability to file taxes, to cooperate with his current tax preparer, and to provide documents required to prepare tax returns".

Because petitioner had assets in excess of his tax liabilities but needed to retain sufficient funds to pay medical expenses, Mr. Keating orally proposed an effective tax administration OIC. Settlement Officer August rejected the oral proposal because petitioner was not in filing compliance. Mr. Keating informed Settlement Officer August that he continued to have difficulty communicating with petitioner and had been unsuccessful, despite repeated attempts, in getting petitioner to file his delinquent tax returns.

Mr. Keating requested a one-month extension of time to file the delinquent tax returns. After considering several factors, including petitioner's severe mental health problems and his failure to submit sufficient financial information or delinquent tax returns, Settlement Officer August determined that any further extension of time would not be productive. He therefore denied Mr. Keating's request for an extension.

**[\*8]**   On October 11, 2012, Mr. Keating telephoned Carleen Powers, Settlement

Officer August's manager, and again requested an extension.  Ms. Powers agreed

with Settlement Officer August's decision and denied the request.  Throughout the

course of the CDP hearing, petitioner did not submit a written proposal for a

collection alternative.

On November 6, 2012, the IRS issued petitioner three Notices of

Determination Concerning Collection Action(s) Under Section 6320 and/or 6330

(determination notices) sustaining the lien and levy action at issue.[7]  On November

20, 2012, petitioner timely petitioned this Court for review of the determination

notices.

OPINION

I.   Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and

rights to property of a taxpayer liable for tax when a demand for payment of the

tax has been made and the taxpayer fails to pay the tax.  Section 6320(a) provides

---

[7] The determination notices state that Appeals (1) verified that the requirements of all applicable law and administrative procedure were met, and (2) determined that the NFTL filing and proposed levy action appropriately balanced the need for efficient collection of taxes with petitioner's concern that these collection actions be no more intrusive than necessary.

[*9] that the Secretary shall furnish the taxpayer with an NFTL within five business days after the notice of lien is filed.

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.

If a taxpayer requests a hearing in response to an NFTL or a notice of levy pursuant to section 6320 or 6330, a hearing shall be held before an impartial officer or employee of Appeals. Secs. 6320(b)(1), (3), 6330(b)(1), (3). The hearing under section 6320 generally shall be conducted in a manner consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c). At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). In addition to considering issues raised by the taxpayer under section 6330(c)(2), the Appeals officer must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3).

[*10] A taxpayer is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes the tax deficiency, additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Following a hearing Appeals must determine whether to sustain the filing of the lien and whether proceeding with the proposed levy is appropriate. In making that determination Appeals is required to take into consideration: (1) the verification required by section 6330(c)(1); (2) relevant issues raised by the taxpayer; and (3) whether the proposed lien or levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

II.     Standard of Review

Section 6330(d)(1) grants this Court jurisdiction to review Appeals' determination in connection with a collection hearing. Petitioner argues that we should apply a de novo standard of review to all procedural matters, including

**[*11]** issues concerning the conduct of the CDP hearing. Respondent argues that we should apply an abuse of discretion standard of review.

Although section 6330 does not prescribe the standard of review that the Court is to apply in reviewing the Commissioner's administrative determinations, we have stated that, where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the validity of the underlying tax liability is not properly at issue, however, the Court will review the Commissioner's administrative determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. Petitioner does not dispute the existence or amounts of the underlying tax liabilities. Accordingly, we review respondent's sustaining the proposed collection actions for abuse of discretion.

Appeals abuses its discretion if it acts "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999); see also Tinnerman v. Commissioner, T.C. Memo. 2010-150, aff'd, 448 Fed. Appx. 73 (D.C. Cir. 2012). Acting without a sound basis in fact or law means that an agency such as the IRS "makes an error of law * * * or rests its determination on a clearly erroneous finding of fact * * * [or] 'applies the correct law to facts

[*12] which are not clearly erroneous but rules in an irrational manner.'" United States v. Sherburne, 249 F.3d 1121, 1125-1126 (9th Cir. 2001) (citations omitted) (quoting Friedkin v. Sternberg (In re Sternberg), 85 F.3d 1400, 1405 (9th Cir. 1996)); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-403 (1990). A taxpayer generally bears the burden of proving abuse of discretion. Rule 142(a); Titsworth v. Commissioner, T.C. Memo. 2012-12.

III.    Determination To Proceed With Collection

Petitioner asserts two theories to argue that respondent abused his discretion. Petitioner first attacks respondent's decision to deny his October 4, 2012, request for more time to submit the requested information. Petitioner argues that respondent, in refusing to grant the extension request, improperly and prematurely terminated the hearing. Petitioner next attacks respondent's decision to reject collection alternatives. Petitioner argues that respondent was "statutorily required", under section 6330(c)(2)(A), to consider collection alternatives. We address each theory in turn.

    A.    Respondent's Decision To Terminate Petitioner's Hearing Was Not an Abuse of Discretion.

An Appeals officer's unreasonable denial of a request for more time to submit financial information or other evidence may be an abuse of discretion. See

[*13] <u>Shanley v. Commissioner</u>, T.C. Memo. 2009-17.  The reasonableness of a request for more time, and the reasonableness of a denial of such a request, will depend on the particular facts of the case.  <u>Dinino v. Commissioner</u>, T.C. Memo. 2009-284.  Additionally, the Appeals officer's denial of the request should be viewed in context.  <u>Morlino v. Commissioner</u>, T.C. Memo. 2005-203.

Petitioner argues that respondent's refusal to grant the request for more time to submit the information was unreasonable and arbitrary because respondent failed to take into account petitioner's mental condition.  Petitioner asserts that his mental condition precluded him from effectively assisting Mr. Keating in the CDP hearing.  As a consequence, petitioner argues that he should not be subject to the "same rigid deadlines" as other taxpayers.  Respondent argues that the denial of the request was reasonable in the light of, among other things, petitioner's failure to meet deadlines, his history of noncompliance, and respondent's previous deadline extensions and accommodations.  In other words, respondent argues that, under all of the facts and circumstances, petitioner was given ample time to submit the requested information.  On the facts of this case, we find that respondent's decision was reasonable and that, therefore, there was no abuse of discretion in denying petitioner's October 4, 2012, request for more time to submit the requested information.

**[\*14]** First, at petitioner's request, respondent rescheduled the telephone CDP hearing from May 31, 2012, to June 25, 2012, and transferred the case to the Appeals Office in Los Angeles, California, for a face-to-face hearing, even though petitioner had not submitted the requested financial information or filed the requested delinquent tax returns.

Second, respondent's approach was not inconsistent with IRS guidelines. "There is no requirement that the Commissioner wait a certain amount of time before making a determination as to a proposed levy." Gazi v. Commissioner, T.C. Memo. 2007-342, 94 T.C.M. (CCH) 474, 479 (2007); see also sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. "Appeals will, however, attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs.

Third, we disagree that respondent improperly and prematurely terminated petitioner's hearing, ignoring the fact that petitioner was suffering from mental health problems. The record shows that respondent, in making his determination, took into account petitioner's mental health problems.[8] In fact, respondent

---

[8] Contrary to petitioner's argument on brief, the October 4, 2012, face-to-face hearing was not the first time that Settlement Officer August became aware of
(continued...)

[*15] expended extra effort in an attempt to accommodate petitioner's mental illness and to ensure he had adequate time to submit the requested information. For example, respondent transferred the case to the Appeals Office in Los Angeles, California, for a face-to-face hearing when similarly situated taxpayers-- i.e., taxpayers who are not in filing compliance--generally would not have received such a hearing. See sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. Respondent also gave petitioner multiple opportunities and extensions of time to submit the requested information before he closed the file. Furthermore, by the time petitioner made the October 4, 2012, final extension request, more than five months had passed since respondent had sent petitioner the first letter, dated May 2, 2012, requesting supporting information. No statutory or regulatory provision requires that taxpayers be afforded unlimited opportunities to supplement the administrative record. Roman v. Commissioner, T.C. Memo. 2004-20. The statute requires only that a taxpayer be given a reasonable chance to be heard before the issuance of a notice of determination. Id.

---

[8](...continued)
petitioner's mental health problems. As reflected in the case history entries, by August 3, 2012, Settlement Officer August was aware of them. In addition, Settlement Officer August credibly testified at trial that, in making his determination, he took them into account.

**[\*16]** B.    <u>Respondent's Decision To Reject Collection Alternatives Was Not an Abuse of Discretion</u>.

Petitioner also argues that, even if respondent did not abuse his discretion by denying the request for more time, respondent abused his discretion by failing to consider collection alternatives and that respondent was "statutorily required", under section 6330(c)(2)(A), to consider collection alternatives. Respondent argues that petitioner was ineligible for a collection alternative because he failed to provide the required forms and information.

It is not an abuse of discretion for the Appeals Office to reject collection alternatives and sustain a proposed collection action on the basis of the failure of a taxpayer to submit requested financial information or to achieve current compliance with filing obligations. <u>See, e.g.</u>, <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 111-112, 115-116 (2007); <u>Taylor v. Commissioner</u>, T.C. Memo. 2009-27; <u>Roman v. Commissioner</u>, T.C. Memo. 2004-20. Additionally, it is not an abuse of discretion for the Appeals Office to decline to consider a collection alternative where no written proposal is ever placed before the reviewing officer. <u>See</u> <u>McLaine v. Commissioner</u>, 138 T.C. 228, 243 (2012); <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005).

**[\*17]** Petitioner (1) never made a concrete proposal in writing for a collection alternative, (2) never provided the requested financial information, and (3) never filed the requested delinquent tax returns for 2005, 2007, 2009, 2010, and 2011. Any one of these failures justified respondent's determination not to allow a collection alternative.

We are not unsympathetic to petitioner's position. We also realize that the statutory requirements may seem to work harsh results to taxpayers, such as petitioner, who suffer from mental illness. However, our role in this proceeding is limited by the express provisions of section 6330 that govern a taxpayer's challenges to collection action. The record here does not show that respondent acted in a manner that was arbitrary, capricious, or without sound basis in fact or law. The record in fact shows that respondent expended extra effort to accommodate petitioner's mental illness. Accordingly, we hold that respondent did not abuse his discretion by terminating petitioner's CDP hearing and rejecting collection alternatives that were never submitted in writing. Respondent's determination to proceed with collection is sustained.

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

**[\*18]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.