T.C. Memo. 2018-22

UNITED STATES TAX COURT

RODNEY P. WALKER,[1] Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16108-14L, 9435-15L.          Filed February 26, 2018.

Both P and R have moved for summary judgment in these CDP cases. We will deny P's motion and grant R's motion in part. We will remand these cases to Appeals for supplemental determinations on two issues.

Rodney P. Walker, pro se.

Nicole C. Beckley, for respondent.

_____

[1]We consolidated the cases at docket Nos. 16108-14L and 9435-15L for trial, briefing, and opinion.

**[*2]**                    MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  These consolidated cases are before us to review two

determinations by the Internal Revenue Service (IRS) Appeals Office (Appeals)

following two collection due process (CDP) hearings conducted pursuant to

sections 6320(b) and (c) and 6330(b) and (c).[2]  Respondent seeks to collect from

petitioner his unpaid Federal income tax for his 2001 through 2007 and 2009

taxable (calendar) years.  Appeals' first determination was to sustain respondent's

notice of Federal tax lien (NFTL) with respect to petitioner's unpaid 2001 through

2007 tax, and its second determination was to sustain respondent's notice of intent

to levy (levy notice) with respect to petitioner's unpaid 2007 and 2009 tax.[3]

Petitioner assigns errors to those determinations; respondent denies any error.  We

review the determinations pursuant to section 6330(d)(1).  Each party has moved

for summary judgment in his favor (petitioner's motion and respondent's motion).

Each party objects to our granting the other's motion except that petitioner

concedes that we may grant respondent's motion as it pertains to 2001 and 2002.

_____

[2]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

[3]As discussed <u>infra</u>, respondent had already notified petitioner of his intent
to collect by levy petitioner's unpaid 2001 through 2006 tax.

**[*3]** We accept that concession and will not further address 2001 and 2002 in this report. We will sometimes refer to the remaining years at issue (2003-07 and 2009) as the controversy years.

Summary judgment expedites litigation. It is intended to avoid unnecessary and expensive trials. It is not, however, a substitute for trial and should not be used to resolve genuine issues of material fact. E.g., Estate of Powell v. Commissioner, 148 T.C. __, __ (slip op. at 10) (May 18, 2017). We may grant summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). The moving party bears the burden of proving that no genuine dispute as to any material fact exists, and we will draw any factual inferences in the light most favorable to the nonmoving party. See, e.g., George v. Commissioner, 139 T.C. 508, 512 (2012).

In support of his motion and in opposition to petitioner's motion, respondent relies on the pleadings, two declarations (along with attachments thereto), and relevant documents from his administrative files. One declaration is by Settlement Officer (SO) Wilhamina Hayes, the Appeals employee who was assigned to

[*4] conduct petitioner's CDP hearing with respect to the NFTL and who determined that the notice should stand. The second declaration is by Timothy G. Kash, the then manager of Linda Reeve, who was the settlement officer assigned to conduct petitioner's CDP hearing with respect to the levy notice and who determined that the notice should stand. Apparently SO Reeve is unavailable to be a declarant. Mr. Kash approved her determination to sustain the levy notice, and attached to his declaration are SO Reeve's notes and the documents that she reviewed in making her determination. Petitioner has provided us with no affidavit or declaration to support either his motion or his opposition to respondent's motion. He refers to, and appears to rely on, the declarations and file documents provided by respondent.

We will deny petitioner's motion, grant respondent's motion in part, and remand these cases to Appeals for supplemental determinations on two issues.

## Background

We draw the following facts from the pleadings, the motions, the declarations, and the documents provided by respondent from his administrative files.

### Petitioner's Residence

Petitioner resided in California when he filed the petitions.

**[*5]** <u>Notices of Deficiency and Certified Mail Logs</u>

Petitioner did not file Federal income tax returns for the controversy years. Because of that failure, respondent completed substitutes for returns for petitioner pursuant to section 6020(b). On the basis of those substitutes, respondent determined deficiencies in petitioner's tax liabilities for those years and prepared statutory notices of deficiency (statutory notices or notices). The record contains copies of those notices for the controversy years, which were obtained by SO Hayes (2003 through 2007) and SO Reeve (2007 and 2009) in preparation for petitioner's CDP hearings. Each notice is correctly addressed to petitioner, states that there is a deficiency in tax for that year, and shows a particular United States Postal Service certified mail number. The record also contains a copy of a redacted certified mail log (mail log or log) obtained by SO Reeve that states that a statutory notice for 2009 was sent to petitioner. The log is dated February 4, 2013, and shows petitioner's name and address, a certified mail number matching the number on the 2009 notice, a Postal Service employee's signature, and a postmark of even date with the date of the log. Attached to respondent's motion are copies of three other redacted mail logs.[4] The first is dated July 9, 2007, states that

---

[4]Respondent may introduce as evidence a mail log that is not in the administrative record to refute petitioner's argument that he did not receive a

(continued...)

**[*6]** statutory notices for 2003 and 2004 were sent to petitioner, and shows petitioner's name and address, certified mail numbers matching the numbers on the notices, a Postal Service employee's signature, and a postmark of even date with the dates on the notices. The second mail log, dated October 20, 2008, is similar except that it references statutory notices for 2005 and 2006. The third mail log, dated December 22, 2009, is different in that, while it shows petitioner's name and address, a certified mail number matching the number on the 2007 notice, a Postal Service employee's signature, and a postmark of even date with the date of the notice, it does not state, as do the other mail logs, that a statutory notice was mailed to petitioner.

Respondent acknowledges that the four mail logs contain a "technical defect" in that, while they show the total number of pieces of mail that accompanied each log to the post office (more than just the mailings to petitioner), they lack acknowledgment that any number of pieces was received by the post office. The spaces on the logs to show that information are blank.

---

[4](...continued)
statutory notice on the ground that the record may be supplemented if it does not adequately disclose the grounds for Appeals' determination. See Crain v. Commissioner, T.C. Memo. 2012-97, 2012 WL 1083489, at *5.

**[*7]** Respondent has also attached to his motion a copy of Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for each of the controversy years. Each form shows that a statutory notice was issued for the year indicated and that, subsequently, assessment of tax was made.

NFTL Determination

Petitioner did not file petitions in response to any of the statutory notices, and respondent's Forms 4340 show that, for each year, he assessed the tax, interest, and penalties (without distinction, tax) due. Petitioner did not pay the assessed amounts, and on November 20, 2012, respondent filed the NFTL and notified petitioner of that filing and of his right to a CDP hearing. In response to the notification, petitioner timely submitted to respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioner listed issues that he wished to discuss:

- Verify whether or not the IRS followed all proper procedure as required by law.

- I don't believe I am liable for the assessed tax.

- I should NOT be held responsible for the penalties accrued.

- To challenge this "liability" seeing that I NEVER had a chance to challenge it before.

[*8]  •  If this liability is indeed a proper assessment and can be proven that it is authentic and owed, I would like to discuss what collection alternatives are available to me, including, but not limited to, Offer in Compromise, Installment Agreements, and any other payment arrangements that may be available to me.

In preparation for conferring with petitioner, SO Hayes reviewed various documents from respondent's administrative files to determine respondent's compliance with the law and administrative procedure. She reviewed transcripts from respondent's integrated data retrieval system (IDRS) to verify that statutory notices had been issued and that the assessments for each controversy year were properly made. As stated, she obtained copies of the notices for 2003 through 2007 and noted that they had been sent to petitioner's address of record. Following that preparation, she made two attempts to contact petitioner by letter to arrange his CDP hearing, but petitioner responded to neither letter. Her first letter, dated April 9, 2013, set forth the date and time for a telephone conference and instructed petitioner that she could consider collection alternatives only if he filed returns for 2008 through 2011 and returned to her a collection information statement. The letter also informed him that he could not dispute his underlying liabilities because he had had a prior opportunity to do so. The letter stated that he had been sent deficiency notices for each of 2001 through 2007 and had failed to file Tax Court petitions in response to any of them. She telephoned him at the

[*9] time established for the telephone conference, but the phone number petitioner had provided was no longer in service. Her second letter, dated May 7, 2013, invited petitioner to telephone her and informed him that he had until May 24, 2013, to provide the requested information and that, if he did not provide it, Appeals would promptly make a determination with respect to his hearing request. Petitioner did not provide the requested information, and, on June 6, 2013, Appeals sent him notice of its determination to sustain the NFTL (NFTL determination). In an attachment to the NFTL determination, SO Hayes stated the following reasons for the determination. The requirements of any applicable law or administrative procedure had been met. Petitioner could not raise his underlying tax liabilities because he had had a prior opportunity to do so. Appeals could not consider collection alternatives because petitioner had failed to file returns and to provide the requested collection information. The NFTL was appropriate under the circumstances: It balanced the need for the efficient collection of taxes with petitioner's concern that the collection action be no more intrusive than necessary.

Petitioner timely petitioned us for review of the NFTL determination. Petitioner assigned the following errors to that determination. Respondent failed to meet the requirements of applicable law and procedure during the CDP hearing.

**[\*10]** He did not allow petitioner the opportunity to challenge his liability for the assessed tax. He did not allow petitioner to dispute discrepancies in the assessment of the tax. He did not accord petitioner a fair and impartial hearing. He did not provide petitioner with documents, files, and admissible evidence to support respondent's claim of the assessed tax. He denied petitioner a face-to-face hearing. He did not allow petitioner to make an audio recording of the hearing.

Levy-Notice Determination

In October 2013, respondent sent petitioner the levy notice. In response, petitioner timely submitted another Form 12153, raising the same issues that he had raised in response to the NFTL. What ensued is much the same as that which ensued following petitioner's request for a CDP hearing with respect to the NFTL. To determine respondent's compliance with the law and administrative procedure, SO Reeve reviewed IDRS transcripts to verify that assessments for 2007 and 2009 were made, and she obtained copies of the statutory notice and mail log for 2009. Her letter dated March 11, 2014, is similar to SO Hayes' first letter, including SO Reeve's statement that petitioner could not dispute his liability during his CDP hearing because respondent's records indicate that he had been sent statutory notices. The letter set a telephone conference for April 1, 2014. Petitioner responded to that letter by letter dated March 24, 2014 (March 24 letter). He did

[*11] not by that letter provide any unfiled returns, nor did he provide the requested collection information.  He denied having had a prior opportunity to dispute his underlying tax liability for either 2007 or 2009, arguing that he could not have had a prior opportunity because he had "never" received a statutory notice for either year.  Subsequently, he did not answer the phone when, on April 1, 2014, SO Reeve called him for the scheduled telephone conference.  On that date, she again wrote petitioner, acknowledging his letter and reiterating her request for unfiled tax returns and for collection information necessary for her to consider any collection alternative.  She invited petitioner to contact her and gave him two weeks to provide the requested information.  She stated that, without the requested information, Appeals would promptly make a determination with respect to his hearing request.  Petitioner did not respond to the April 1 letter, and, on June 5, 2014, Appeals sent petitioner notice of its determination to sustain the levy notice (levy-notice determination).  Appeals summarized the levy-notice determination as follows:  "Appeals has determined that all legal and administrative requirements for action taken have been met.  The Notice of Intent to Levy was appropriate and it balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action is no more intrusive than necessary."  In an attachment to the levy-notice determination,

**[*12]** SO Reeve added that she had not considered collection alternatives because petitioner was not current in his tax return filing obligations and had not submitted financial documentation. She could not consider challenges to his underlying liabilities because he had had a prior opportunity to challenge them.

Petitioner timely petitioned us for review of the levy-notice determination, assigning errors similar to those he assigned to the NFTL determination.

## Discussion

I. Introduction

Sections 6320 and 6330 provide taxpayers the opportunity for notice and a hearing upon the filing of an NFTL (section 6320) and before a levy to collect unpaid tax (section 6330). If a taxpayer requests a CDP hearing, the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer may raise at a hearing any relevant issue relating to the unpaid tax or the collection action, including challenges to the appropriateness of collection actions and offers of collection alternatives. See sec. 6330(c)(2)(A). The taxpayer may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any period if the person did not receive a statutory notice for such liability or did not otherwise have an opportunity to dispute such liability. See

[*13] sec. 6330(c)(2)(B). A taxpayer who may raise the underlying liability during a CDP hearing must properly raise the merits of the underlying liability as an issue during the hearing to preserve the issue for judicial review. See Giamelli v. Commissioner, 129 T.C. 107, 112-116 (2007); secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. The merits are not properly raised if the taxpayer challenges the underlying tax liability but fails to present Appeals with any evidence with respect to that liability after having been given reasonable opportunity to present such evidence. See LG Kendrick, LLC v. Commissioner, 146 T.C. 17, 34 (2016), aff'd, 684 F. App'x 744 (10th Cir. 2017); secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Where the underlying tax liability is properly at issue, we review the determination of liability de novo. E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). To the extent the underlying tax liability is not at issue, we review the determination for abuse of discretion. Id. at 182. In reviewing for abuse of discretion, we must uphold the Appeals officer's determination unless it is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Keller v. Commissioner, 568 F.3d 710, 716-718 (9th Cir. 2009), aff'g in part

[*14] T.C. Memo. 2006-166, and aff'g in part, vacating in part decisions in related cases.

II.     Motions and Responses

    A.     Petitioner's Motion

Petitioner asks that we summarily determine that respondent may not proceed with collection of any unpaid tax for any of the controversy years.  The gravamen of his claim is that respondent may not proceed with collection because he "failed to comply with the[] procedures" specified in the Internal Revenue Manual (IRM) regarding the mailing of statutory notices.

At the times respondent claims to have mailed statutory notices for the controversy years to petitioner, the mailing procedures in the IRM called for delivery of statutory notices and a Postal Service Form 3877[5] to the post office, where a Postal Service employee would "compare the count and [certified mail] numbers used with the envelope notices."  See IRM pt. 4.8.9.9.3(6) (Dec. 1, 2006). Those mailing procedures further required the IRS employee delivering the statutory notices to the post office to sign and date the Form 3877 to indicate

---

[5]Postal Service Form 3877, Firm Mailing Book For Accountable Mail, is a form for recording items delivered to and received by the post office and showing the type of mail, e.g., certified mail, or the service requested, e.g., signature confirmation.

[*15] delivery of the notices to the post office. Id. (7). The Postal Service employee was to insert a postmark on the form indicating receipt. Id.

Petitioner observes that the mail logs respondent submitted to evidence the mailing of statutory notices to him for the controversy years lack both the signature of an IRS employee and acknowledgment by the Postal Service of the number of items received. Petitioner argues: "Proper verification of the exact number of envelopes the Postal Service received from the IRS is of vital importance because it is the only way to verify that each piece of certified mail intended for delivery by the Post Office was actually received into the Post Office mail system."

Petitioner is unclear in drawing out the consequences of the defects in the mail logs that respondent submitted. Most narrowly, he claims that those defects deny respondent the benefit of a presumption of regularity to establish mailing. Petitioner also argues that respondent's failure to comply with those procedures means that the settlement officers did not fulfill their obligations under section 6330(c)(1) to verify that the assessments were made in compliance with any applicable law and administrative procedure. Finally, and most broadly, petitioner suggests that respondent's failure to comply strictly with his own standards for

**[\*16]** documenting the mailing of statutory notices means that the assessments made on the basis of those notices were, as a matter of law, invalid.

### B.  Respondent's Response to Petitioner's Motion

Respondent objects to our granting petitioner's motion.  Conceding that, with regard to mailing of the statutory notices for the controversy years, he is not entitled to a presumption of regularity in mailing, he argues that, nonetheless, SOs Hayes' and Reeve's verifications of mailing were legally sufficient and the defects in the mail logs were not fatal to either assessment or collection of the unpaid tax. Moreover, he continues, even if verification was flawed or the defects in the mail logs were legally significant, the remedy would be remand to Appeals or a trial, not abatement of the tax due.

### C.  Respondent's Motion

Respondent moves for summary adjudication in his favor with respect to all of the issues in these cases.  In particular, he asks that we summarily determine that petitioner's underlying tax liability is not at issue for any of the controversy years.  For 2003 through 2006, respondent argues that petitioner had had a prior opportunity to raise the existence or amount of his underlying tax liabilities and was, therefore, precluded from raising them during his CDP hearing in response to the NFTL and is, likewise, precluded from raising them here.  See Daniel v.

[*17] Commissioner, T.C. Memo. 2009-28; sec. 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs.  For 2007 and 2009, respondent argues that petitioner did not properly raise his underlying tax liabilities during the two CDP hearings at issue (i.e., the NFTL hearing, with respect to 2007, and the levy-notice hearing, with respect to 2007 and 2009).  See Giamelli v. Commissioner, 129 T.C. at 112-116; secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Respondent also asks that we determine that, in making their determinations to proceed with collection, SOs Hayes and Reeve complied with the requirements of sections 6320(c) and 6330(c)(3).  Section 6330(c)(3) provides that an Appeals officer's determination shall take into consideration not only her verification that the requirements of any applicable law and administrative procedure have been met but also (1) the issues raised by the taxpayer with respect to the unpaid tax or the proposed collection actions and (2) that the proposed collection actions balanced the need for efficient collection of taxes with the taxpayer's concern that any collection action be no more intrusive than necessary.  In particular, respondent asks us to determine that SOs Hayes and Reeve (1) were fair and impartial, (2) properly verified respondent's assessments of tax, and (3) did not abuse their discretion in (A) denying petitioner a face-to-face hearing, (B) not

[*18] permitting him to record the hearings, and (C) not considering collection alternatives.

### D. Petitioner's Response to Respondent's Motion

Petitioner objects to our granting respondent's motion. He claims a genuine dispute as to material fact with respect to (1) whether the settlement officers fulfilled their obligations under section 6330(c)(1) to verify that the requirements of any applicable law and administrative procedure had been met (particularly with respect to petitioner's claim that, in mailing the statutory notices to him, respondent had failed to comply with mailing procedures specified in the IRM), (2) whether the evidence of mailing of those statutory notices on which the settlement officers relied is adequate to prove that the notices were mailed, (3) whether he had had a prior opportunity to challenge the underlying tax liabilities at issue, and (4) whether he had received statutory notices for the controversy years. Petitioner also disputes, although he does not label it a dispute as to a material fact, respondent's claim that he did not properly raise his underlying tax liabilities during the two CDP hearings at issue.

**[*19]** III.    <u>Discussion</u>

      A.    <u>Petitioner's Motion</u>

         1.    <u>Presumption of Regularity</u>

While petitioner is of course correct that respondent is not entitled to a presumption of regularity to establish mailing of the notices of deficiency,[6] it does not follow that respondent's assessments were invalid, SOs Hayes and Reeve abused their discretion in deciding to the contrary, and, consequently, petitioner is

---

[6]The "presumption of regularity in mailing" is a particular application of the more general "presumption of regularity" (sometimes, presumption of official regularity), which supports the proposition that, in the absence of evidence to the contrary, public officers are presumed to have discharged their duties. <u>See, e.g.</u>, <u>United States v. Ahrens</u>, 530 F.2d 781, 785 (8th Cir. 1976) ("In our view, the presumption of official regularity controls the question of the validity of the notice of deficiency. 'The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.' <u>United States v. Chem. Found., Inc.</u>, 272 U.S. 1, 14-15, * * * (1926)."). With respect to the mailing of a statutory notice, we have said: "[W]here the existence of the notice of deficiency is not disputed, a properly completed Form 3877 by itself is sufficient, absent evidence to the contrary, to establish that the notice was properly mailed to a taxpayer. * * * More specifically, exact compliance with the Form 3877 mailing procedures raises a presumption of official regularity in favor of respondent." <u>Coleman v. Commissioner</u>, 94 T.C. 82, 91 (1990). The failure of exact compliance with the Form 3877 mailing instructions, however, does not mean that the notice was not mailed; it means only that the evidence of an undisputed notice and a Form 3877 in less than exact compliance do not, even absent evidence to the contrary, establish as a matter of law that the notice was mailed to the taxpayer. As we said in <u>Coleman v. Commissioner</u>, 94 T.C. at 91: "A failure to comply precisely with the Form 3877 mailing procedures may not be fatal if the evidence adduced is otherwise sufficient to prove mailing."

**[*20]** entitled to summary judgment. Petitioner points to respondent's failure to submit "corroborating evidence to evince proof of mailing such as habit evidence as to * * * [his] mailing procedures." Petitioner is mistaken if he believes that copies of a proper statutory notice and an imperfect mail log are necessarily insufficient for an Appeals officer (or, indeed, any fact finder) to infer from that evidence that the Commissioner, in fact, mailed the notice to the intended recipient.[7] See, e.g., O'Rourke v. United States, 587 F.3d 537, 541-542 (2d Cir. 2009) (holding that the Commissioner's evidence of a proper statutory notice and a Form 3877 defective only in that (1) it did not state the number of pieces of mail received by the Postal Service and (2) it lacked the signature or initials of a Postal Service employee was, in the absence of a presumption of mailing, sufficient to meet the Commissioner's burden of showing that the notice was mailed). As discussed in the next section of this report, we think that neither SO Hayes nor SO

---

[7]In the law of evidence, inferences differ from presumptions. An inference is a permissible deduction that the fact finder may make without express direction of the law to that effect. That is, the fact finder is permitted to deduce the existence of fact B from fact A by ordinary rules of reasoning and logic. A presumption is distinguished from an inference in that, if basic fact A is established, then the fact finder must accept that the presumed fact B has also been established unless the presumption is rebutted. See 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, sec. 301.02[1], at 301-6 (Mark S. Brodin, ed.) (2d ed. 2017).

[*21] Reeve abused her discretion in concluding that statutory notices for the controversy years were mailed to petitioner.

### 2. Sufficiency of Settlement Officers' Verifications

As stated, if a taxpayer requests a CDP hearing, the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). Petitioner appears to challenge the adequacy of SO Hayes' and SO Reeve's reliance on computer transcripts for verification that the requirements of any applicable law or administrative procedure had been met. Respondent answers that section 6330(c)(1) does not mandate that Appeals rely upon a particular document to satisfy the section's verification requirement. See, e.g., Craig v. Commissioner, 119 T.C. 252, 261-262 (2002); Jewell v. Commissioner, T.C. Memo. 2016-239, at *10. Appeals may, indeed, rely on computer transcripts to satisfy the verification requirement. See, e.g., Roberts v. Commissioner, 329 F.3d 1224, 1228 (11th Cir. 2003), aff'g 118 T.C. 365 (2002); Grace Found. v. Commissioner, T.C. Memo. 2014-229, at *14-*15. It may also rely on a mail log with minor defects (such as the lack of both a Postal Service employee's signature and a count of the items delivered to the post office) if supported by copies of the statutory notices in question. See Cropper v. Commissioner, 826 F.3d 1280, 1286 (10th Cir. 2016),

[*22] aff'g T.C. Memo. 2014-139; cf. O'Rourke, 587 F.3d at 541-542 (not a CDP case).  Respondent concludes:  "In petitioner's cases, the SOs properly verified that all legal and procedural requirements were met by using transcripts in all years, and the CML [mail log] for 2009, to verify that assessments were proper."

We agree with respondent that verification was sufficient.  Petitioner did not during either CDP hearing bring to either settlement officer's attention the technical defect in the mail logs that respondent now acknowledges (i.e., the absence of entries for the number of pieces of mail received by the post office).  Indeed, petitioner did not claim any defect until he objected to our granting respondent's motion.  And because petitioner did not bring any defects to the attention of SO Hayes, the settlement officer did not err or abuse her discretion in relying on computer transcripts to make the necessary verifications for 2003 through 2007, the controversy years subject to the NFTL.  See Grace Found. v. Commissioner, at *15 ("An Appeals officer may rely on the IRS account transcript to satisfy the section 6330(c)(1) verification requirement unless the taxpayer alleges that a specific irregularity transpired during the assessment process and the taxpayer provides evidence of such an irregularity.").

For 2007 (again) and for 2009, the years subject to the levy notice, however, petitioner had by the March 24 letter notified SO Reeve of his belief that he had

**[\*23]** not received a statutory notice for either year. Petitioner had thus alleged an irregularity in the assessment procedure for each year, and SO Reeve could not on account of that allegation rely on computer transcripts alone for verification. See, e.g., Crain v. Commissioner, T.C. Memo. 2012-97, 2012 WL 1083489, at \*5 ("The Commissioner must send a notice of deficiency to the taxpayer before he may assess, collect, or reduce to judgment most income tax liabilities. \* \* \* If the taxpayer contests receipt of the notice of deficiency, the Commissioner must introduce evidence of actual mailing."). For 2009, however, besides computer transcripts, SO Reeve had the mail log listing the 2009 statutory notice, which, although missing some information, was, together with a copy of the 2009 notice, sufficient to establish that the 2009 notice had been mailed, as respondent claims. See, e.g., Cropper v. Commissioner, 826 F.3d at 1286; O'Rourke, 587 F.3d at 541-542. That is not necessarily the case for 2007, for the record does not establish that SO Reeve had a copy of the mail log dated December 22, 2009, which shows mail addressed to petitioner with a certified mail number matching the number on the 2007 notice. And while we could remand the case at docket No. 16108-14L to Appeals for it to clarify the record as to evidence on which SO Reeve relied in concluding that the 2007 notice was properly mailed to petitioner, see Hoyle v. Commissioner, 131 T.C. 197, 205 (2008); Noyes v. Commissioner, T.C. Memo.

**[\*24]** 2017-27, at \*4, we do not think that is necessary. We have in the record a copy of a mail log dated December 22, 2009, showing information with respect to the 2007 notice similar enough to the information shown on the mail log on which SO Reeve relied for 2009 that it would be inconsistent for her to reach a conclusion with respect to whether the 2007 notice was mailed to petitioner different from the one she reached with respect to whether the 2009 notice was mailed to him. We are satisfied with SO Reeve's efforts, based on at least a computer transcript for 2007 and on both a computer transcript and a mail log for 2009, to verify that statutory notices for both 2007 and 2009 had been mailed to petitioner. She did not abuse her discretion in so concluding.[8]

### 3. Failure To Adhere to the IRM

Finally, petitioner claims that he is entitled to summary judgment simply because of respondent's failure to comply with the standards described in the IRM

---

[8]And while it remains an open question whether petitioner may challenge the existence or amount of his underlying liabilities for 2007 and 2009, see infra, sec. III.B.2.c., it does not follow that, just because that question is open, the verification question for those years also is open. Even if SO Hayes (for 2007) and SO Reeve (for both 2007 and 2009) abused their discretion in determining that petitioner had had a prior opportunity to challenge his 2007 and 2009 underlying liabilities (and so could not challenge them during his NFTL and levy-notice hearings), it does not follow that they also abused their discretion in relying on computer transcripts and mail logs to verify that the requirements of any applicable law or administrative procedure had been met; such reliance, we have concluded, was not an abuse of discretion.

[*25] for documenting the mailing of statutory notices. Taken at face value, the claim rests on the premise that, even if the statutory notices for the controversy years were in fact sent (and, moreover, received), Appeals erred in upholding the NFTL and the levy notice. That would be so only if, as a matter of law, respondent's failure to strictly comply with the IRM mailing procedures rendered invalid the assessments based on those notices. The short answer to petitioner's claim is: "The IRM lacks the force of law and does not create rights for taxpayers." Weiss v. Commissioner, 147 T.C. 179, 196 (2016). Appeals did not solely on account of any failure by respondent to comply with the IRM mailing procedures for statutory notices err in upholding the NFTL and the levy notice.

### 4. Conclusion

We will deny petitioner's motion.

### B. Respondent's Motion

### 1. Dispute as to Material Fact

We will first address petitioner's claim that there are genuine disputes as to material fact that preclude any summary adjudication in respondent's favor.

Petitioner's first two claims--that there are genuine disputes as to whether (1) the settlement officers fulfilled their section 6330(c)(1) verification obligations and (2) the evidence of mailing on which they relied is adequate to prove that

[*26] statutory notices were, indeed, mailed--seem to collapse into one claim. Petitioner does not assert any particular failures on the settlement officers' parts in fulfilling that obligation. He seems to suggest, as he did in support of his own motion, that the defects in the mail logs mean that the settlement officers cannot have properly verified that the assessments were made in compliance with all legal and administrative requirements. We have adequately addressed, and have rejected, petitioner's first two claims and need not restate our reasons. We will address petitioner's remaining claims as we proceed.

2. Prior Opportunity To Raise Existence or Amount of Underlying Liability

a. 2003 through 2006

For 2003 through 2006, respondent argues that petitioner had a prior opportunity to challenge the existence or amounts of his underlying liabilities and was, therefore, precluded from challenging them during his CDP hearing in response to the NFTL and is, likewise, precluded from challenging them here. Respondent relies on a Notice of Determination Concerning Collection Actions(s) Under Section 6320 and/or 6330 issued to petitioner on June 13, 2011 (prior determination notice), that informed petitioner of Appeals' determination that respondent's notice of levy with respect to petitioner's income tax liabilities for

[*27] 2003 through 2006 would stand. A copy of the prior determination notice is attached to respondent's motion. Petitioner does not dispute the authenticity of the prior determination notice. The prior determination notice was issued in response to petitioner's request for a CDP hearing made on August 10, 2010, following his receipt of a levy notice for 2003 through 2006 dated July 7, 2010. The prior determination notice recites that, although the assigned settlement officer offered petitioner a hearing by telephone, no hearing was held because the settlement officer could not reach petitioner by telephone at the time scheduled for the hearing and petitioner did not respond to a subsequent letter from the settlement officer. With respect to petitioner's challenge to his underlying liabilities, the prior determination notice states that, because petitioner did not contact the settlement officer, the issue of his underlying liabilities could not be discussed. Respondent argues that, if a taxpayer previously received notice of his right to a CDP hearing with respect to the same tax and tax period, he has had an opportunity to challenge the existence and amount of the underlying tax liability and may not challenge the existence and amount of that tax liability in a subsequent CDP hearing. Respondent relies on sections 301.6320-1(e)(3), Q&A-E7, and 301.6330-1(e)(3), Q&A-E7, Proced. & Admin. Regs., and Daniel v. Commissioner, T.C. Memo. 2009-28. Those authorities are consistent with respondent's argument but address

[*28] a situation where the taxpayer did not request a CDP hearing in response to the earlier CDP notice. That, of course, is not the case here because petitioner did request a CDP hearing in response to the July 7, 2010, levy notice for 2003 through 2006. The question is whether the prior CDP notice and the settlement officer's subsequent actions gave petitioner a meaningful opportunity to challenge the existence or amount of his 2003 through 2006 underlying tax liabilities. We believe that they did give him a meaningful opportunity, of which he did not take advantage. See Lewis v. Commissioner, 128 T.C. 48, 61 (2007) ("A conference with the Appeals Office provides a taxpayer a meaningful opportunity to dispute an underlying tax liability."); secs. 301.6320-1(e)(3), Q&A-E2, 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. ("An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals[.]").

Because we are not here considering an actual challenge to the existence or amounts of petitioner's underlying liabilities for 2003 through 2006, but rather whether SO Hayes erred in precluding petitioner from raising such a challenge (because she had determined that he had had a prior opportunity to do so), we ask only whether SO Hayes abused her discretion in so precluding petitioner, see Bell v. Commissioner, 126 T.C. 356, 358-359 (2006), which, demonstrably, she did not.

**[*29]**          b.     <u>2007 and 2009</u>

For 2007 and 2009, respondent argues that petitioner did not properly raise his underlying liabilities during the two CDP hearings at issue here (i.e., the NFTL hearing, with respect to 2007, and the levy-notice hearing, with respect to both 2007 and 2009).  Referring to the two Forms 12153 that petitioner submitted requesting those hearings and to the March 24 letter that petitioner sent to SO Reeve (the sum and total of petitioner's communications to Appeals in response to the NFTL and the levy notice), respondent claims that petitioner never stated <u>what</u> he was challenging with respect to his underlying liabilities but only said that he wanted to challenge those liabilities and should not be held responsible for penalties.  "Petitioner never presented any information or documents showing that the underlying liabilities were incorrect."  And because of that, argues respondent, Appeals made no determination with respect to petitioner's underlying liabilities, and there is nothing for us to review.

In their first letters to petitioner, both SO Hayes and SO Reeve notified him that he could not challenge his underlying tax liabilities because he had been sent statutory notices and, thus, he had had a prior opportunity to challenge his liabilities.  They repeated those explanations in the attachments that, respectively, they wrote and that were attached to the NFTL and the levy-notice determinations.

**[\*30]** In his two petitions in these consolidated cases, petitioner makes it clear that he believes that Appeals erred in failing to allow him to challenge his liability for the assessed tax.⁹ It is true that, <u>if</u> petitioner had received statutory notices for 2007 and 2009, he could not during any CDP hearing concerning those years challenge his underlying tax liabilities. <u>See</u> sec. 6330(c)(2)(B). If, however, he had <u>not</u> received statutory notices for those years, then he was entitled to challenge his underlying liabilities.

The record is not clear as to the bases on which SOs Hayes and Reeve decided that petitioner had had a prior opportunity to challenge his 2007 liability (both SO Hayes and SO Reeve) and his 2009 liability (only SO Reeve). It is insufficient to deny him a challenge on the ground that a statutory notice had been sent to him (which is the only reason either settlement officer recites) without also concluding that he had received the notice. As for 2003 through 2006, we are not now, in disposing of respondent's motion, considering an actual challenge to the existence or amounts of petitioner's 2007 and 2009 underlying liabilities, but, rather, we are considering whether either SO Hayes (for 2007) or SO Reeve (for

---

⁹And while petitioner does not aver as to how his liability for either year is any less than respondent assessed, we will read his complaint that he was not allowed to challenge his liability for either 2007 or 2009 to imply that he has grounds on which to challenge those liabilities.

[*31] both 2007 and 2009) abused her discretion in precluding petitioner from raising such a challenge on the assumption that he had received a statutory notice. Because the record is unclear, we will remand these cases for Appeals to clarify the record as to the evidence (if any) on which Appeals relies to conclude that petitioner may not for either 2007 or 2009 challenge his underlying tax liability. If Appeals is unable to conclude that petitioner received the requisite statutory notice or notices, we assume that Appeals will allow petitioner to raise a challenge to the existence or amount of his underlying liability before these cases are returned to us.

c.    <u>Conclusion</u>

In sum, we agree with respondent that petitioner had a prior opportunity to challenge his underlying liabilities for 2003 through 2006 and was, therefore, precluded from challenging them during his CDP hearing in response to the NFTL and is, likewise, precluded from challenging them here. We do not decide whether petitioner is similarly precluded with respect to his underlying liabilities for 2007 and 2009 because the record is inadequate for us to determine whether, in concluding that petitioner had had a prior opportunity, either settlement officer abused her discretion. We will remand for clarification or other appropriate action.

**[\*32]**    3.    <u>SOs Hayes' and Reeve's Compliance With the Requirements of Section 6330(c)(3)</u>

a.    <u>Introduction</u>

Respondent points to the NFTL and levy-notice determinations (along with the settlement-officer attachments) and the Hayes and Kash declarations as evidence that, in determining to proceed with collection, Appeals (acting through the settlement officers) took into consideration the verification and other requirements specified in section 6330(c)(3).  On that basis respondent argues that Appeals did not abuse its discretion in determining to proceed with collection for the controversy years.  Except to the extent that we have previously discussed (i.e., with respect to mailing of the 2007 statutory notice and receipt of the 2007 and 2009 notices), we agree that Appeals complied with the requirements of section 6330(c)(3).  We will address particular points raised by petitioner.

b.    <u>CDP Hearings Fair and Impartial</u>

Petitioner contends the hearings were not fair and impartial.  Sections 6320(b)(3) and 6330(b)(3) provide that the hearing shall be conducted by an officer or employee who has had no prior involvement.  Neither SO Hayes nor SO Reeve had any prior involvement in petitioner's tax matters for the tax years at

[*33] issue in the hearings. Both settlement officers were impartial within the meaning of sections 6320(b)(3) and 6330(b)(3).

        c.       <u>No Mandate for Appeals To Provide Taxpayer With Written Confirmation That Requirements of Any Law or Procedure Have Been Met</u>

Petitioner contends that respondent did not provide him with any admissible evidence to support the determinations. The short answer is that SOs Hayes and Reeve did not have to provide petitioner with any written confirmation that the requirements of any applicable law or administrative procedure had been met. As we have said: "Section 6330(c)(1) does not require the Appeals officer to rely on any particular document in satisfying the verification requirement and does not require that the Appeals officer actually give the taxpayer a copy of the verification upon which he or she relied." <u>Shirley v. Commissioner</u>, T.C. Memo. 2014-10, at *24-*25 (citing <u>Craig v. Commissioner</u>, 119 T.C. at 262; <u>Nestor v. Commissioner</u>, 118 T.C. 162, 166 (2002)).

        d.       <u>No Abuse of Discretion in Denying Petitioner a Face-To-Face Hearing</u>

Section 6330 does not mandate that a taxpayer be given a face-to-face hearing. <u>E.g.</u>, <u>LaForge v. Commissioner</u>, T.C. Memo. 2013-183, at *11. Because SOs Hayes and Reeve determined that petitioner had not filed all necessary tax

[*34] returns, and because petitioner had failed to return collection information statements to SOs Hayes and Reeve, the settlement officers did not abuse their discretion in determining that he was entitled to no face-to-face hearing and denying him such a hearing. See id.; see also secs. 301.6320-1(d)(2), Q&A-D8, 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.

e.    No Abuse of Discretion in Not Permitting Audio Recording

Petitioner had no face-to-face hearing, and he did not answer telephone calls from SOs Hayes and Reeve for scheduled telephone conferences. Section 7521(a)(1) accords taxpayers the right "in connection with any in-person interview * * * upon advance request * * * to make an audio recording". We have held that section 7521 applies to section 6330 face-to-face hearings, and a taxpayer providing the IRS with advance notice is allowed to record his face-to-face hearing. Keene v. Commissioner, 121 T.C. 8, 19 (2003). We have also held that section 7521 is not applicable to telephone hearings and that a taxpayer is not entitled to record his telephone hearing. Calafati v. Commissioner, 127 T.C. 219, 229 (2006). The short answer is that there were no spoken communications for petitioner to record, and, even if there had been a telephone hearing (all that

[*35] petitioner was offered), he had no right to record it.  There was no abuse of discretion.

### f. No Abuse of Discretion in Not Considering Collection Alternatives

SO Hayes and Reeve did not abuse their discretion in not considering collection alternatives because they had determined that petitioner had not filed all necessary tax returns and because he had not returned to them the collection information statements they had requested.  See, e.g., Rosenthal v. Commissioner, T.C. Memo. 2014-252, at *16 ("It is not an abuse of discretion for the Appeals Office to reject collection alternatives and sustain a proposed collection action on the basis of the failure of a taxpayer to submit requested financial information or to achieve current compliance with filing obligations.").

### 4. Conclusion

We will deny petitioner's motion and grant respondent's motion in part.  We will grant respondent's motion to the extent that, with respect to the NFTL determination, we find no error in Appeals' determination that respondent may proceed with collection by lien of petitioner's income tax liabilities for 2003 through 2006.  With respect to the NFTL determination for 2007 and the levy-notice determination, we will grant respondent's motion to the extent that

[*36] respondent asks us to determine that (1) Appeals verified that the requirements of any applicable law or administrative procedure were met, (2) the NFTL hearing and the levy-notice hearing were fair and impartial, (3) neither SO Hayes nor SO Reeve had to provide petitioner with any written confirmation of her verification efforts, (4) neither settlement officer abused her discretion in denying petitioner a face-to-face hearing or the right to audio record any telephone hearing, and (5) neither abused her discretion in not considering collection alternatives.

We will remand the cases at docket Nos. 16108-14L and 9435-15L to Appeals for supplemental determinations clarifying the record as to the grounds on which Appeals relied in precluding petitioner from challenging his 2007 and 2009 tax liabilities. If petitioner was entitled to raise challenges to those liabilities,

**[*37]** Appeals shall consider such challenges and report the results of its consideration in its supplemental determinations.

An appropriate order will be issued denying petitioner's motion for summary judgment, granting respondent's motion for summary judgment in part, and remanding these cases for further proceedings consistent with this report.