T.C. Memo. 2018-51

UNITED STATES TAX COURT

LAWRENCE SCANLON AND ALINE FAIRWEATHER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 478-16L.                     Filed April 12, 2018.

<u>Charles R. Markham</u>, for petitioners.

<u>Molly H. Donohue</u>, for respondent.

MEMORANDUM OPINION

ASHFORD, <u>Judge</u>:  This collection due process (CDP) case brought under

sections 6320(c) and 6330(d)[1] is before the Court on cross-motions for summary

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  Some amounts are rounded to the nearest

(continued...)

**[\*2]** judgment filed by the parties.  The only issue for decision is whether the

Internal Revenue Service (IRS) Office of Appeals (Appeals) abused its discretion

in sustaining the following collection actions of the IRS:  (1) filing notices of

Federal tax lien with respect to petitioners' unpaid Federal income tax liabilities

for the taxable years 2011, 2012, and 2013 and (2) issuing a notice of intent to

levy with respect to petitioners' unpaid Federal income liability for the 2013

taxable year.  As explained below, we will grant summary judgment for

respondent and will deny petitioners' cross-motion.

## Background

There is no dispute as to the following facts.[2]

---

[1](...continued)
dollar.

[2]Petitioners, however, in their summary judgment motion have asserted additional facts based on exhibits "A" and "B" which they have attached to their motion.  Exhibit "A" is an unsworn declaration of Charles R. Markham, petitioners' authorized representative before the IRS and counsel of record in this case; the declaration relays a "first hand account of * * * [his] version of events" occurring primarily with IRS Revenue Officer Cynthia Jones (RO Jones) before petitioners availed themselves of the IRS' CDP process.  Exhibit "B" is a portion of the IRS' Integrated Collection System history transcript reflecting certain notes of RO Jones.  Although, as discussed infra p. 15, we employ a de novo scope of review in this case, we find this proffered evidence not material to the question of whether Appeals abused its discretion in sustaining the lien filings for 2011, 2012, and 2013, and the proposed levy for 2013.

[*3] I.     Petitioners

Petitioners Lawrence Scanlon and Aline Fairweather, husband and wife, resided in Pennsylvania at the time the petition was filed with the Court. From 1994 until at least September 2016, Mr. Scanlon was an associate professor of English at Rutgers University. Ms. Fairweather is an attorney, and throughout the years at issue and until at least September 2016, she was a partner at Pepper Hamilton, LLP. They have three children. For the years at issue petitioners' taxable income ranged from $345,603 to $441,185. At the time of the second CDP hearing on July 24, 2015, Mr. Scanlon was 60 years old, Ms. Fairweather was 55 years old, and their children were all under 10 years old.

II.    Petitioners' Underlying Liabilities

Petitioners' tax liabilities for 2011, 2012, and 2013 are the result of their failure to make adequate estimated tax payments with respect to their significant taxable income.

A.    2011

Between April 20, 2011, and April 15, 2012, petitioners made estimated tax payments (including a withheld payment) toward their 2011 Federal income tax liability totaling $119,428. On October 22, 2012, petitioners filed their joint Federal income tax return for 2011 on extension, reporting tax due of $141,167.

[*4] They did not, however, remit payment for the balance of this self-reported liability when they filed the return. Accordingly, on December 17, 2012, respondent assessed the liability plus additions to tax for failure to timely pay the tax under section 6651(a)(2) and failure to make sufficient estimated tax payments under section 6654, and interest.

B.     2012

Between April 20, 2012, and April 15, 2013, petitioners made estimated tax payments (including a withheld payment) toward their 2012 Federal income tax liability totaling $94,115. On October 15, 2013, petitioners filed their joint Federal income tax return for 2012 on extension, reporting tax due of $154,841. As for the previous year, they did not remit payment for the balance of this self-reported liability when they filed the return. Accordingly, on December 2, 2013, respondent assessed the liability plus additions to tax for failure to timely pay the tax under section 6651(a)(2) and failure to make sufficient estimated tax payments under section 6654, and interest.

C.     2013

Between April 16, 2013, and April 15, 2014, petitioners made estimated tax payments (including a withheld payment) toward their 2013 Federal income tax liability totaling $50,450. On October 15, 2014, petitioners filed their joint

[*5] Federal income tax return for 2013 on extension, reporting tax due of $157,516. As for the previous two years, they did not remit payment for the balance of this self-reported liability when they filed the return. Accordingly, on December 8, 2014, respondent assessed the liability plus additions to tax for failure to timely pay the tax under section 6651(a)(2) and failure to make sufficient estimated tax payments under section 6654, and interest.

III.    IRS' Collection Actions

On October 21, 2014, the IRS sent petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (first lien notice). The first lien notice advised them that a notice of lien had been filed in the amount of $77,977 concerning their 2011 and 2012 unpaid Federal income tax liabilities and that they had a right to a hearing to appeal the collection action and to discuss payment method options before Appeals.

In response to the first lien notice, petitioners timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (first CDP hearing request), which the IRS received on November 27, 2014. The first CDP hearing request did not challenge the underlying liabilities but did request the collection alternative of an installment agreement and that a CDP hearing be held with petitioners' authorized representative, Mr. Markham.

**[*6]**    A representative from Appeals acknowledged receipt of the first CDP hearing request by letter to petitioners and Mr. Markham dated December 31, 2014, and the request was assigned to Settlement Officer Edith Dermody (SO Dermody).  On January 12, 2015, SO Dermody sent petitioners and Mr. Markham a letter in which she scheduled a telephonic CDP hearing on February 4, 2015. She also outlined the issues she had to consider during the hearing and informed them that in order for her to consider a collection alternative petitioners needed to submit to her within 14 days a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, together with supporting documentation.  She also requested within 21 days a signed copy of petitioners' Federal income tax return for 2013.  Finally, she informed them that if they preferred to reschedule the hearing or have a correspondence or face-to-face conference, they should call or write her within 14 days.

On January 13, 2015, the IRS sent petitioners another Letter 3172 (second lien notice).  The second lien notice advised petitioners that a notice of lien had been filed in the amount of $114,414 concerning their 2013 unpaid Federal income tax liability and that they had a right to a hearing to appeal the collection action and to discuss payment method options before Appeals.

**[*7]** In response to SO Dermody's January 12, 2015, letter pertaining to petitioners' 2011 and 2012 outstanding liabilities, Mr. Markham sent SO Dermody a letter dated January 31, 2015,[3] enclosing a completed Form 433-A for petitioners, together with supporting documentation. In the letter, he proposed as a collection alternative an installment agreement of $3,000 per month. However, as of February 4, 2015, the date of the scheduled telephonic CDP hearing, SO Dermody had not received the letter with the enclosures.

On February 4, 2015, SO Dermody attempted to contact Mr. Markham to conduct the scheduled telephonic CDP hearing but was unable to reach him. That same day, SO Dermody sent petitioners and Mr. Markham a followup letter informing them that she had tried calling Mr. Markham at the appointed time for the hearing but the call would not go through as dialed and that she had not received the requested documentation. Later that day, SO Dermody received a facsimile from Mr. Markham stating that a telephonic hearing was not necessary, that the first CDP hearing request could be handled by correspondence, and that he had submitted the requested information. In the facsimile, Mr. Markham also

---

[3]The letter is actually (erroneously) dated January 31, 2014. The letter should state a date of "January 31, 2015", one day after the enclosed Form 433-A indicates that petitioners signed the form.

**[\*8]** stated that petitioners' collection alternative proposal was an installment agreement of $3,000 per month, to be payable on the 15th of each month.

On February 10, 2015, the IRS sent petitioners a Letter 1058A, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The levy notice advised petitioners that the IRS intended to levy to collect their 2013 outstanding liability which, through February 20, 2015, totaled $117,822.

In response to the second lien notice and the levy notice, petitioners timely submitted Form 12153 (second CDP hearing request), which the IRS received on February 20, 2015. The second CDP hearing request, like the first CDP hearing request, did not challenge the underlying liability but did request the collection alternative of an installment agreement and that a CDP hearing be held with Mr. Markham. In addition, the form stated that "the taxpayers are requesting a $3,000 per month installment agreement."

The IRS also received on February 20, 2015, a letter from Mr. Markham enclosing copies of the Form 433-A and supporting documentation that he had enclosed with his January 31, 2015, letter to SO Dermody.[4] The letter also stated

---

[4]Apparently the February 20, 2015, letter and the second CDP hearing request were sent directly to and received by RO Jones. See supra note 2. RO

(continued...)

**[*9]** that if petitioners' request for a monthly installment agreement of $3,000 per month is approved, they would be "happy" to withdraw their second CDP hearing request, as well as their first CDP hearing request.

A representative from Appeals acknowledged receipt of the second CDP hearing request by letter to petitioners and Mr. Markham dated March 16, 2015, and the request was also assigned to SO Dermody.

After reviewing petitioners' Form 433-A and supporting documentation, SO Dermody concluded that petitioners could fully pay their outstanding Federal income tax liabilities for 2011, 2012, and 2013 because they had sufficient equity in their retirement assets--a section 401(k) plan maintained by Vanguard (Vanguard plan) and a pension account maintained by TIAA-CREF (TIAA account). According to the Form 433-A, the equity in these assets totaled $645,338; the IRS' records as of July 14, 2015, indicated that petitioners owed the IRS $271,941 for the years at issue (plus the 2010 taxable year). SO Dermody

---

[4](...continued)
Jones had been assigned to collect petitioners' unpaid liability for 2013 and was listed as the person to contact on the second lien notice and the levy notice. On or around March 16, 2015, petitioners' lien and levy case for 2013, including petitioners' second CDP hearing request, was transferred from RO Jones and, as noted in the text above, assigned to SO Dermody.

**[\*10]** then scheduled a second telephonic CDP hearing with Mr. Markham for July 24, 2015, to discuss her conclusion with him.

The second CDP hearing took place as scheduled. During the hearing SO Dermody shared her conclusion, suggesting that petitioners could liquidate their retirement assets to fully pay their outstanding Federal income tax liabilities for 2011, 2012, and 2013. Mr. Markham objected to the suggestion because of its tax implications. In response SO Dermody told him that petitioners could have Federal income tax withheld on any withdrawals and still have enough equity after withholding to fully pay their outstanding Federal income tax liabilities for 2011, 2012, and 2013. The second CDP hearing ended prematurely when SO Dermody placed their telephone call on hold to take another call but was unable to return to the call with Mr. Markham, and she could not reach him for the rest of the day to resume the second CDP hearing. SO Dermody scheduled another telephone call with Mr. Markham for September 23, 2015, "to wrap * * * [things] up".

On September 23, 2015, SO Dermody and Mr. Markham spoke by telephone. During the telephone call SO Dermody reiterated that petitioners should pay their outstanding Federal income tax liabilities by liquidating their retirement assets. Mr. Markham responded that the Vanguard plan was Ms. Fairweather's through her employment and that she was required to contribute to

[*11] the account and did not have access to the funds therein. In reply SO Dermody noted that the supporting documentation submitted with the Forms 433-A showed that Ms. Fairweather had a loan of $30,000 against the Vanguard plan. She therefore requested Mr. Markham to provide to her verification of Ms. Fairweather's inability to access to the account. Mr. Markham stated that he would request this from petitioners and also discuss with them liquidating their retirement accounts. Finally, SO Dermody advised him to get back to her no later than September 30, 2015, and that if petitioners paid their outstanding Federal income tax liabilities she would recommend lien withdrawal; otherwise, if there was no response, she would sustain the lien filings and the proposed levy.

As of November 20, 2015, Mr. Markham had not responded. On November 24, 2015, SO Dermody checked the IRS' records, which revealed that petitioners had made no estimated tax payments for 2015 and that they had not had enough Federal income tax withholding during 2014 to cover the tax due for that taxable year (thereby accruing another liability). Later that day, SO Dermody called Mr. Markham and left him a voicemail message informing him (1) that because she had not heard back from him, she was sustaining the lien filings and the proposed levy; (2) that petitioners had delinquencies pertaining to 2014 and 2015; and (3) that he could call her if he had any questions. She then proceeded to prepare a

**[*12]** Letter 3193, Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or Section 6330 (notice of determination).

There having been no further response from Mr. Markham, Appeals sent petitioners and Mr. Markham the notice of determination. The notice of determination, dated December 8, 2015, sustained the lien filings for 2011, 2012, and 2013, and the proposed levy for 2013. A summary detailing the matters considered by Appeals and its conclusions was attached to the notice of determination and included the following explanations:

### LEGAL AND ADMINISTRATIVE REVIEW

I, Edith M Dermody, verified the requirements of any applicable law or administrative procedure were met. * * *

\*          \*          \*          \*          \*          \*          \*

### ISSUES YOU RAISED

**Collection Alternatives Requested**
You requested the collection alternative of an installment agreement. You do not qualify for an installment agreement because you are not current with your estimated tax payments for 2015 and you have equity in assets that will satisfy the liability in full. We asked you to liquidate your 401(k) and / or pension to satisfy the liability. You did not do so. Therefore, we are sustaining collection.

**Challenges to the Liability**
You did not dispute your liability.

**You raised no other issues.**

**[*13]**                                    **BALANCING ANALYSIS**

> The issuance of the Final Notice and the filing of the NFTL balance
> the need for the efficient collection of tax with your legitimate
> concerns that the collection action be no more intrusive than
> necessary, because you have sufficient equity in assets to pay the
> liability in full. You accrued an additional liability for 2014, and have
> not made any estimated tax payments for 2015. Collection is
> sustained.

On January 6, 2016, petitioners timely filed a petition with this Court for

review of the notice of determination.

## Discussion

I.      General Legal Principles

   A.      Summary Judgment

The purpose of summary judgment is to expedite the litigation and avoid

unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678,

681 (1988).  Summary judgment may be granted where the moving party shows,

through the pleadings and other materials, that there is no genuine dispute of

material fact and a decision may be rendered as a matter of law.  Rule 121(b);

Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965

(7th Cir. 1994).  The party moving for summary judgment bears the burden of

showing that there is no genuine dispute as to any material fact, and factual

inferences will be viewed in a light most favorable to the party opposing summary

**[*14]** judgment. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985); <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982). The parties agree that there is no genuine dispute as to any material fact. Consequently, we may render a decision as a matter of law.

B.      <u>Standard of Review</u>

Petitioners do not challenge the validity of their underlying Federal income tax liabilities for 2011, 2012, and 2013. Indeed, the bulk of petitioners' liabilities arises from self-assessments made on their Federal income tax returns for those years, and the remainder arises from their admitted failure to pay those self-assessed amounts. Thus, petitioners' underlying liabilities are not properly before the Court, and we will review Appeals' determination for abuse of discretion; that is, whether the determination was arbitrary, capricious, or without a sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 308, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). We do not conduct an independent review and substitute our own judgment for that of the Appeals officer. <u>Murphy v. Commissioner</u>, 125 T.C. at 320.

**[\*15]** C.     Scope of Review

Respondent asserts that in nonliability CDP cases such as this the scope of

our review is limited to the administrative record.  That is true for such cases

appealable to the U.S. Courts of Appeals for the First, Eighth, and Ninth Circuits.

See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part as to

this issue T.C. Memo. 2006-166; Murphy v. Commissioner, 469 F.3d 27;

Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), rev'g 123 T.C. 85

(2004).  This case, however, is appealable to the U.S. Court of Appeals for the

Third Circuit, see sec. 7482(b)(1)(G)(i), which has yet to address that precise issue

in a precedential opinion, see Rozday v. Commissioner, 703 F. App'x 138, 139

(3d Cir. 2017); Tuka v. Commissioner, 324 F. App'x 193, 195 n.2 (3d Cir. 2009).

Accordingly, we will not limit our review to the administrative record.[5]  See

Robinette v. Commissioner, 123 T.C. at 103.

D.     CDP Review Procedure

Under section 6321, if any person liable to pay any tax neglects or refuses to

do so after notice and demand, the amount, including any interest, addition to tax,

---

[5]The only proffered evidence in this case seemingly outside of the administrative record is the two exhibits attached to petitioners' summary judgment motion.  As noted, see supra note 2, that evidence is irrelevant to the question of whether SO Dermody abused her discretion in sustaining the lien filings for 2011, 2012, and 2013, and the proposed levy for 2013.

**[*16]** or assessable penalty, shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Section 6323 authorizes the Commissioner to file a notice of Federal tax lien. Furthermore, if any person liable to pay any tax neglects or refuses to do so after notice and demand, section 6331(a) authorizes the Commissioner to collect the unpaid amount by way of a levy upon all property and rights to property belonging to such person or upon which there is a lien. Pursuant to section 6320(a), the Commissioner must provide the person with written notice of and an opportunity for an administrative hearing to review the propriety of the filing of the notice of Federal tax lien. Likewise, pursuant to section 6330(a), the Commissioner must provide the person with written notice of and an opportunity for an administrative hearing to review the proposed levy.

If an administrative hearing is requested in a lien and/or levy case, the hearing is to be conducted by Appeals. Secs. 6320(b)(1), (4), 6330(b)(1). At the hearing, the Appeals officer conducting it must obtain verification that the requirements of applicable law and administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax, the notice of lien filing, or the proposed levy, including, as relevant here, offers of collection alternatives, such as an installment

[*17] agreement.[6]  Secs. 6320(c), 6330(c)(2)(A).  Following the hearing, the Appeals officer must determine among other things whether the completed or proposed collection actions are appropriate.  In reaching the determination, the Appeals officer must take into consideration:  (1) whether the requirements of applicable law and administrative procedure have been met; (2) all relevant issues raised by the taxpayer, including offers of collection alternatives, such as an installment agreement; and (3) whether any completed or proposed collection actions balance the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary.  Secs. 6320(c), 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

Petitioners do not dispute, and the record shows, that SO Dermody verified that the applicable legal and administrative procedural requirements were met.  Petitioners also do not argue that SO Dermody failed to balance the need for efficient tax collection with the intrusiveness of collection for the taxpayer.  The only issue petitioners raise is whether Appeals' determination to reject their

---

[6]Additionally, under certain circumstances not relevant here, the taxpayer may raise at the hearing challenges to the underlying tax liability.  Secs. 6320(c), 6330(c)(2)(B).

**[\*18]** proposed installment agreement and sustain the lien filings for 2011, 2012, and 2013, and the proposed levy for 2013 was an abuse of discretion.

II.  Rejection of the Installment Agreement

Section 6159(a) authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installments if he deems that the "agreement will facilitate full or partial collection of such liability." See also Thompson v. Commissioner, 140 T.C. 173, 179 (2013).  The decision to accept or reject installment agreements lies within the discretion of the Commissioner.  Id.; see also sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.  As noted supra p. 14, we will not make an independent determination of what would be an acceptable alternative.  Murphy v. Commissioner, 125 T.C. at 320.  If the Appeals officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, we will not reweigh the equities.  Thompson v. Commissioner, 140 T.C. at 179.

In this case, SO Dermody rejected petitioners' proposed installment agreement for two reasons:  (1) petitioners were not current in making adequate estimated tax payments and (2) petitioners had sufficient equity in assets--to wit, the Vanguard plan and the TIAA account--to fully pay their outstanding Federal

[*19] income tax liabilities for 2011, 2012, and 2013 and they did not liquidate these accounts despite being asked to do so. We will address each reason in turn.

A.    Full Compliance With Making Estimated Tax Payments

SO Dermody rejected petitioners' proposed installment agreement because they failed to make adequate current estimated tax payments so as not to accrue additional tax liabilities. The Court generally has held that there is no abuse of discretion when an Appeals officer relies on guidelines published in the Internal Revenue Manual (IRM) to evaluate a proposed installment agreement. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Tillery v. Commissioner, T.C. Memo. 2015-170; Arede v. Commissioner, T.C. Memo. 2014-29; Maselli v. Commissioner, T.C. Memo. 2010-19; Aldridge v. Commissioner, T.C. Memo. 2009-276; Etkin v. Commissioner, T.C. Memo. 2005-245. When a collection alternative is at issue, IRM pt. 8.22.4.2.1(4) (Nov. 5, 2013) directs an Appeals officer to the appropriate IRM sections containing the administrative policies and procedures relating to that alternative; as relevant here, IRM pt. 5.14.1 governs installment agreement acceptance and rejection determinations. See also IRM pt. 8.22.7.5 (Sept. 23, 2014).

[*20] IRM pt. 5.14.1.4.2(1) (Sept. 19, 2014) directs an Appeals officer to consider a taxpayer's filing and paying compliance before determining that the best manner of paying delinquent taxes is through an installment agreement, and IRM pt. 5.14.1.4.2(3) (Sept. 19, 2014) requires that a taxpayer be current with filing and payment requirements to be eligible for an installment agreement. See IRM pts. 5.14.1.2(8)(f) (Jan. 1, 2015), 5.14.1.4.2(18) (Sept. 19, 2014), 8.22.7.5(6) (Sept. 23, 2014); see also Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Boulware v. Commissioner, T.C. Memo. 2014-80, aff'd, 816 F.3d 133 (D.C. Cir. 2016); Pavlica v. Commissioner, T.C. Memo. 2007-163; Londono v. Commissioner, T.C. Memo. 2003-99. It is undisputed that as of November 24, 2015, a little over two weeks before the notice of determination was sent to petitioners and Mr. Markham, petitioners had accrued an additional Federal income tax liability for 2014 and had not made any estimated tax payments for 2015; and on that same day, SO Dermody informed Mr. Markham of these payment delinquencies.

Although petitioners readily acknowledge that an Appeals officer has discretion to grant or deny a proposed installment agreement, they contend that SO Dermody had "no legal basis for using outstanding estimated taxes for denial of an installment agreement"; rather, they had "the right to" and SO Dermody should have granted them an installment agreement that also included the delinquent

[*21] estimated tax payments.  In support of their contentions, petitioners cite IRM

pt. 5.14.1.4.2(18) (Sept. 19, 2014) ("If it appears a taxpayer will have a balance

due at the end of the current year, the accrued liability may be included in an

agreement[.]").

Petitioners' contentions are virtually identical to taxpayers' arguments that

we rejected in Boulware v. Commissioner, at *21-*22, and Lipson v.

Commissioner, T.C. Memo. 2012-252, at *8.  In each case, the Court rejected

those arguments, holding that the Appeals officer's reliance, in part, on the

taxpayer's failure to pay current taxes in rejecting the taxpayer's proposed

installment agreement was not an abuse of discretion because the officer was not

required to accept the proposed installment agreement.  Likewise, we hold here

that SO Dermody could have granted petitioners an installment agreement that

included their delinquent estimated tax payments for 2014 and 2015, but she

committed no abuse of discretion in not doing so and in rejecting their proposed

installment agreement on the basis that they were not in payment compliance for

2014 and 2015.[7]

---

[7]Petitioners also complain that SO Dermody never raised their "compliance
or estimated tax payment problems" during the second CDP hearing and the
September 23, 2015, telephone call.  Their complaint, however, is much ado about
nothing because in fact on November 24, 2015, 15 days before the issuance of the

(continued...)

**[*22]** B.     Liquidation of Assets

SO Dermody's second reason for rejecting petitioners' proposed installment agreement was their failure to liquidate their retirement assets.  According to IRM pt. 5.14.1.4(5) (Sept. 19, 2014), if a taxpayer can fully or partially satisfy balance due accounts by using cash, withdrawing cash from bank accounts or other accounts, borrowing on equity in real or personal property, or selling real or personal property, the Appeals officer is directed to request that full or partial payment be made on balance due accounts by conversion of assets (through borrowing or selling) or by cash or other liquid assets (such as securities or money market accounts).  This IRM subpart also identifies factors that preclude requiring liquidation of the assets, such as the taxpayer's advanced age, ill health, or other special circumstances; the necessity of the assets for the production of income or the health and welfare of the taxpayer's family; or the taxpayer's qualification for

---

[7](...continued)
notice of determination, SO Dermody left Mr. Markham a voicemail message informing him, inter alia, of petitioners' delinquencies with respect to 2014 and 2015 and that if he had any questions to call her.  She never heard back from Mr. Markham, and it was not her obligation to negotiate indefinitely or wait any specific amount of time before having the notice of determination issued.  See Kuretski v. Commissioner, T.C. Memo. 2012-262, at *11, aff'd, 755 F.3d 929 (D.C. Cir. 2014); see also Rosenthal v. Commissioner, T.C. Memo. 2014-252, at *15 ("No statutory or regulatory provision requires that taxpayers be afforded unlimited opportunities to supplement the administrative record.").

[*23] a guaranteed, streamlined, or Express installment agreement.[8] This Court has consistently held that an Appeals officer does not abuse his discretion when he rejects an installment agreement because a taxpayer refuses to liquidate assets to satisfy his tax liabilities. See, e.g., Tillery v. Commissioner, at *16; Boulware v. Commissioner, at *24; Bibby v. Commissioner, T.C. Memo. 2013-281; O'Donnell v. Commissioner, T.C. Memo. 2013-247; McCarthy v. Commissioner, T.C. Memo. 2013-214; Lipson v. Commissioner, at *9-*10.

Petitioners suggest that SO Dermody abused her discretion in directing that they liquidate their retirement accounts because there are special circumstances that prevent them from liquidating those assets--to wit, they cannot access the equity in their retirement accounts. However, petitioners' supporting documentation with their Form 433-A showed that Ms. Fairweather had a loan of $30,000 against the Vanguard plan. The IRS' Financial Analysis Handbook--IRM pt. 5.15.1--treats the ability to borrow against a retirement or profit-sharing account as the ability to withdraw, with the loan value at a minimum being considered the equity in the account. See IRM pt. 5.15.1.27 (Nov. 17, 2014).

---

[8]Petitioners do not contend that they qualify for any of these agreements (and on the basis of their total balances due for 2011, 2012, and 2013 as of the date of the issuance of the notice of determination, they do not qualify for any of them in any event). See IRM pt. 5.14.5 (Dec. 23, 2015).

[*24] Therefore, it was appropriate that SO Dermody seek further supporting documentation from petitioners regarding their access to the funds in their retirement accounts before granting their proposed installment agreement. Neither petitioners nor Mr. Markham, however, provided the requested documentation and neither ever requested additional time to do so. This Court has held on numerous occasions that it is not an abuse of discretion for Appeals to reject collection alternatives and sustain the proposed collection action due to the taxpayer's failure to submit requested financial information. See, e.g., McLaine v. Commissioner, 138 T.C. 228 (2012); Pough v. Commissioner, 135 T.C. 344 (2010); Wright v. Commissioner, T.C. Memo. 2012-24; Ranuio v. Commissioner, T.C. Memo. 2010-178; Dinino v. Commissioner, T.C. Memo. 2009-284; Huntress v. Commissioner, T.C. Memo. 2009-161; Prater v. Commissioner, T.C. Memo. 2007-241; Chandler v. Commissioner, T.C. Memo. 2005-99; Roman v. Commissioner, T.C. Memo. 2004-20. Indeed, the last contact SO Dermody had with either petitioners or Mr. Markham before the notice of determination was issued on December 8, 2015, was on September 23, 2015, when she and Mr. Markham spoke by telephone in order to resume and conclude the second CDP hearing. It was during that call that SO Dermody requested the additional supporting documentation regarding petitioners' access to their retirement accounts. Appeals will attempt to conduct a CDP

[*25] hearing and issue a notice of determination "as expeditiously as possible under the circumstances", but there is no period within which Appeals must issue a notice of determination. Secs. 301.6320-1(e)(3), Q&A-E9, 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. As we stated in Clawson v. Commissioner, T.C. Memo. 2004-106, slip op. at 17, "there is neither requirement nor reason that the Appeals officer wait a certain amount of time before rendering his determination". See also supra note 7.

Petitioners also argue that liquidating their retirement accounts would create an economic hardship for them. However, they never raised this issue during either the first CDP hearing or the second CDP hearing; rather, the administrative record clearly shows that Mr. Markham was concerned only about the tax implications of liquidating these accounts. Our review of CDP cases is limited to issues that taxpayers raised during their CDP hearings. Giamelli v. Commissioner, 129 T.C. at 112-113; Tillery v. Commissioner, at *17; Boulware v. Commissioner, at *28; see also secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Accordingly, the economic hardship issue is not properly before us.[9]

_____

[9]Even if it was, the administrative record shows that petitioners would not suffer economic hardship by accessing their retirement accounts to fully pay their
(continued...)

[*26] Finally, petitioners argue that SO Dermody abused her discretion because her "raising the retirement account issue" constituted a "new issue" in contravention of Policy Statement 8-2 in the IRM, and IRM pts. 8.6.1.6.1(2) (June 25, 2015) and 8.6.1.6.2(1) (Nov. 14, 2013).  Policy Statement 8-2 provides:  "1. **New issues not to be raised by Appeals**[.]  2. Appeals will not raise new issues. Appeals will also not reopen an issue on which the taxpayer and the Service are in agreement.  **Exception**: IRC 7121."  IRM pt. 1.2.17.3 (Aug. 13, 2014).  IRM pt. 8.6.1.6.1(2) states that "a new issue is a matter not raised during Compliance's consideration", and IRM pt. 8.6.1.6.2(1) states that "Appeals will not raise new issues and will focus dispute resolution efforts on resolving the points of disagreement identified by the parties.  The Appeals process is not a continuation or an extension of the examination process."  According to petitioners, they and RO Jones "were in de facto agreement" that petitioners' retirement accounts would not be accessed and thus they were "somewhat 'blindsided'" when SO Dermody raised the issue of their liquidating the accounts, which they consider a new issue.

---

[9](...continued)
outstanding Federal income tax liabilities for 2011, 2012, and 2013.

[*27] Petitioners however also failed to raise this issue with SO Dermody.

Accordingly, like the economic hardship issue, this issue is not properly before the

Court.[10]

III.    Conclusion

The Court finds that SO Dermody did not abuse her discretion in rejecting

petitioners' proposed installment agreement and sustaining the lien filings for

2011, 2012, and 2013, and the proposed levy for 2013.  The administrative record

shows that she:  (1) verified that all legal and procedural requirements were met,

(2) considered all issues petitioners raised, and (3) determined that the completed

and proposed collection actions appropriately balance the need for the efficient

---

[10]Even if it was, petitioners' arguments and their reliance on those sections of the IRM are wholly misplaced.  Petitioners conflate their contact with RO Jones with an examination of their tax liabilities, i.e., consideration by IRS Compliance. The references to "new issues" in those IRM sections involve Appeals' propriety in raising new issues with a taxpayer in a noncollection or non-CDP context.  RO Jones' handling of petitioners' Federal income tax liabilities for 2011, 2012, and 2013 was solely in a collection context and likewise so was SO Dermody's handling of these liabilities; SO Dermody was ultimately assigned to handle petitioners' CDP hearing requests, which included determining whether to grant their proposed installment agreement.  Indeed, in analyzing petitioners' entitlement to the proposed installment agreement, the IRM specifically instructs her to "consider all relevant facts including the taxpayer's compliance history, ability to pay and equity in assets", IRM pt. 8.22.7.5(5) (Sept. 23, 2014), and "explore the possibility of liquidating or borrowing against those assets" if the taxpayer has equity in assets that could be used to fully or substantially satisfy balance due accounts, IRM pt. 5.14.1.4(5) (Sept. 19, 2014).

**[\*28]** collection of taxes with the legitimate concern of petitioners that the collection actions be no more intrusive than necessary.  Accordingly, we will grant respondent's motion and deny petitioners' cross-motion.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.